## BURLINGTON–ROCK ISLAND R. CO. v. NEWSOM et ux.

### No. 2956.

Court of Civil Appeals of Texas. Waco.

May 3, 1951.

Williford & Emerson, Fairfield, Ellen Victery, Teague, for appellant.

Bowlen Bond, Teague, for appellee.

HALE, Justice.

Appellees, Luther O. Newsom and wife, sued appellant for actual and exemplary damages. Their claims for actual damages were grounded upon allegations that appellant had permitted Johnson grass to mature

and go to seed on its right-of-way during 1948 and 1949 and had failed to construct and maintain its roadbed, tracks and a certain culvert thereunder in such manner as to carry surface waters resulting from an ordinary rainfall off of their land through such culvert. Their claim for exemplary damages was based upon allegations that appellant had wilfully and maliciously failed to comply with the terms of a mandatory injunction theretofore issued by the court below commanding it to construct all such necessary culverts and sluices in its embankment as the natural lay of the land adjacent thereto may require for the necessary drainage of ordinary rainfall.

The case was tried before a jury. In answer to 26 Special Issues the jury found in substance as follows: that during the month of May in 1947 and in 1948 and again on June 12, 1949, there was an ordinary rainfall on appellees' land, the natural drainage from which was through the culvert under appellant's roadbed; that appellant failed to maintain said culvert in such condition as to carry the surface waters off of appellees' land and as a result thereof such waters backed up on a part of said land, thereby causing damage to an electric pump and contaminating the water in a well so as to render the water unfit for human consumption; that the electric pump was of the reasonable cash market value of $90 before the overflow on June 12, 1949, was of no value thereafter, and that the reasonable value of the labor necessary to remove the old pump and install a new one was $10; that the reasonable value of the labor and services necessary to dig and equip another well, in lieu of the one which had been contaminated, was $131 and the reasonable value of the materials necessarily and properly required in the construction of such well was $250; that appellees did not permit Johnson grass to mature and go to seed on their land in the years 1948 or 1949, but that appellant did permit Johnson grass to mature and go to seed on its right-of-way adjacent to appellees' land during each of such years, that the same spread to appellees' land and as a result thereof appellees expended labor of the value of $50 in digging up the grass in 1949; that appellant had a reasonable time after March 26, 1949, (that being the date when the judgment of the court became final on the issuance of a mandatory injunction) and before the overflow on June 12, 1949, to remove the portion of the embankment around the concrete box in its embankment, and to construct such necessary culverts and sluices as the natural lay of the land adjacent thereto required for the necessary drainage of ordinary rainfall; that the failure of appellant to comply with the terms of the judgment relating to such injunction "was an act intentionally done and omitted, wilfully and maliciously, full well knowing the perilous position of plaintiffs, and conscious of the duty and obligations imposed on it by said judgment and decree of this court"; that appellees had suffered exemplary damages by reason of the conduct of appellant in failing to comply with the terms of the judgment relative to such injunction and that $400 was the sum of money which would reasonably compensate appellees for the exemplary damages suffered by them.

Based upon the verdict of the jury, the court rendered judgment in favor of appellees and against appellant for the sum of $956, being $531 as actual damages, $400 as exemplary damages and $25 as statutory penalty under the provisions of Art. 6401 of Vernon's Tex.Civ.Stats. In due time appellant filed and presented its motion for new trial. The motion was overruled and the cause is now properly pending in this court for review on ten points of error.

Appellant says the trial court erred in submitting to the jury an incorrect measure of the actual damages sustained by appellees on account of the claimed injury to their water well and its equipment and in rendering judgment for such damages on the findings of the jury with respect thereto. We sustain this contention. The fundamental purpose underlying all rules for the measurement of actual damages is to indemnify an aggrieved party for the pecuniary loss suffered by him, so as to place him as nearly as possible in the same position he would have occupied but for the injury of which he complains. Reaugh v. McCollum Exploration Co., 139 Tex. 485, 163 S.W.2d 620, pt. 1; Sabine & E. T. R.

Co. v. Joachimi, 58 Tex. 456; Burr's Ferry, B. & C. R. Co. v. Allen, Tex.Civ.App., 149 S.W. 358; Davis v. Standard Rice Co., Tex.Civ.App., 293 S.W. 593, (er.dis.); 13 T. J. p. 73, Sec. 7; 25 C.J.S., Damages, § 17, p. 471. Appellee Newsom testified in substance that he had not used water from his well for human consumption after its contamination but that he had continued at all times thereafter to use water from it for his hogs and livestock. It thus appears to us that if the recovery awarded to appellees in the sum of $481 on account of the injury and damage to their water well and its equipment is permitted to stand, they will in all reasonable probability be in a better position than they would have occupied had there been no such injury or damage, in that they will not only have their old well, whatever it may be worth to them, and the sum of $90 as the value of the electric pump with which it was equipped and $10 as the value of the labor in removing the pump and installing the new one, but they will also have a new well which is presumably better and of more value than the old well would have been had there never been any overflow on their land.

■ We also agree with the contention of appellant that the well of appellees was and is a part of their realty. However, it does not necessarily follow that the correct or exclusive legal measure of the damages resulting from the injury to the well is the difference between the reasonable cash market value of their land immediately before and immediately after such injury. That is the correct measure of damages for permanent injury to land but where the injury is only temporary and the premises can be substantially restored to their former condition at a reasonable cost, such cost of restoration is usually regarded as the dominant element in correctly measuring the damages legally recoverable for such temporary injury. 13 T. J. p. 163, Sec. 74 and authorities; Coleman v. Wright, Tex. Civ.App., 155 S.W.2d 382, pts. 4–6 and authorities; Shell Pipe Line Corp. v. Harris, Tex.Civ.App., 68 S.W.2d 236, pt. 6; Gulf Pipe Line Co. v. Hurst, Tex.Civ.App., 230 S.W. 1024, pts. 4–6. From the record before us we cannot say as a matter of law

that the injury and damage to the well of appellees did or did not constitute permanent as distinguished from temporary injury to their realty. This issue was not submitted to the jury in any manner or form. The evidence as to the source from which the water in the well became contaminated and hence the cause of such contamination was extremely meagre and in some respects conflicting. We find no evidence as to the extent or probable duration of the contamination, or as to whether the water in the well might have been restored to its former condition of purity by chlorination or some other simple process or, if so, as to what the reasonable cost thereof might have been. In our opinion the burden rested upon appellees to establish under proper pleading and proof either (1) that the injury to their well constituted permanent injury and damage to their realty and the reasonable value of their land immediately before and after such injury, or (2) that such injury was temporary in nature and the reasonable cost of restoring the well or land to substantially the same condition which existed immediately before such injury. Appellees did not do either and because of their failure to do so we think the judgment rendered in their favor for actual damages must be reversed.

■■ Appellant also says in effect that the trial court erred in submitting to the jury the general issue of exemplary damages and in assessing such damages against it on the findings of the jury because, among other reasons, the evidence was insufficient to support the findings upon which the judgment is based. We sustain this contention. The fundamental purpose underlying an award of exemplary, punitive or vindictive damages is not to compensate an aggrieved person for actual injury or damage suffered by him but it's intended purpose is to punish the wrong-doer in order that such punishment may serve as a warning and example to prevent him and others from the commission of like offenses and wrongs in the future. 13 T. J. p. 237, Sec. 130 and authorities; 15 Amer.Jur. p. 700, Sec. 266 and authorities; 25 C.J.S., Damages, § 117, p. 705, and authorities. That being the theory and the only correct

legal theory upon which exemplary damages may be assessed in any case, it is manifest that the finding of the jury to the effect that $400 was the sum of money which would reasonably compensate appellees for the exemplary damages suffered by them in this case is not only without any support in the competent, admissible evidence, but such finding is insufficient as a matter of law to support the award of exemplary damages against appellant.

■■■ The prior judgment of the trial court authorizing and directing the issuance of the mandatory writ of injunction which is the basis of appellees' claim for exemplary damages in this proceeding was affirmed on appeal to this court. See Burlington-Rock Island R. Co. v. Newsom, Tex.Civ. App., 219 S.W.2d 129. Therefore, we may take judicial notice of the facts under which the issuance of the writ was authorized and we may also note the remedies which are or may become available to appellees for its enforcement. We find no evidence in the present proceeding showing or tending to show that the writ was ever issued or served on appellant or that the failure of appellant to comply with the terms of the judgment relating to such writ on or before June 12, 1949 was "an act intentionally done and omitted, wilfully and maliciously." Furthermore, we have been cited to no case in which any court has assessed exemplary damages against a wrong-doer as a proper means of punishment for his failure to comply with the terms of a mandatory injunction. Although exemplary damages may not be assessed as punishment in the absence of actual damages inflicted wilfully, maliciously or through gross negligence, such elements are not necessary or essential in order to warrant the civil courts of this State to punish a wrong-doer for contempt of court on account of misconduct in failing to comply with the terms of a mandatory injunction. We find no indication in this record that appellees have sought at any time by the institution of contempt proceedings against appellant to enforce the injunctive relief awarded to them in connection with the subject matter of this litigation, and we are inclined to the view that such a proceed-

ing, if necessary, would be amply sufficient to afford them an adequate remedy for the redress of their claimed grievances and at the same time afford the courts an opportunity to enforce respectful compliance with their judgments and decrees.

We do not deem it necessary to discuss or pass upon any of the other points of error upon which this appeal is predicated because the questions thereby presented will not likely arise on another trial in the same manner in which they are now presented. Because of the errors which we have discussed, the judgment appealed from is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed. Reversed and remanded.