**WESTINGHOUSE SUPPLY CO., A DIVISION OF WESTINGHOUSE ELECTRIC CORPORATION, Appellant,**

v.

**PAGE AND WIRTZ CONSTRUCTION COMPANY, Appellee.**

**No. 9388.**

Court of Appeals of Texas, Amarillo.

Dec. 29, 1982.

Rehearing Denied Feb. 15, 1983.

Underwood, Wilson, Berry, Stein & Johnson, Harlow Sprouse and R.A. Wilson, Amarillo, Rassman, Gunter & Boldrick, John E. Gunter, Midland, for appellant.

Jones, Trout, Flygare, Moody & Brown, James L. Wharton, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

Westinghouse Supply Co., a division of Westinghouse Electric Corporation, appeals from a judgment awarding Page and Wirtz Construction Company actual and consequential damages (*i.e.* actual damages in the sum of $96,901.54 and prejudgment interest in the sum of $25,182.69) and treble damages (*i.e.* in the sum of $193,803.08, plus prejudgment interest in the sum of $50,-

365.38), and attorneys fees in the sum of $9,000 under the Texas Deceptive Trade Practices Act (DTPA) for a breach of an implied warranty on the sale of a main electrical power switch (*i.e.* a Pringle switch) on the main electrical panel in the Lubbock Civic Center. We affirm, in part, and reverse and remand, in part.

Page and Wirtz was the general contractor for the construction of the Lubbock Civic Center. The main electrical power switch was purchased from Westinghouse as a component part of the main electrical panel for the Civic Center. On 30 November 1976, the main electrical panel and steam room where the equipment was located was damaged by a fire and explosion. At that time the equipment had been in use for approximately 30 to 45 days.

On the day the incident occurred, Deaver & Vickery, the electrical subcontractor, was connecting the water chiller to the downstream power source leading from the main panel network. Deaver & Vickery's crew chief placed the main power switch in its open position to shut off the electricity. After testing the power line, he found that the electricity was not shut off.

The electricity for the Civic Center was furnished by Lubbock Power and Light through two internally connected transformers located at the Center. The transformers were locked and accessible only to employees of L P & L. After the crew chief determined that the electricity was not shut off at the main panel, he requested L P & L to shut off the electricity at the transformers. Complying with Deaver & Vickery's request, L P & L's maintenance foreman came to the Center, placed one transformer in open or off position and, after checking the other transformer, concluded that it was in the open or off position. After taking that action, L P & L's foreman told Deaver & Vickery's crew chief that the electricity was shut off at the transformers.

The crew chief rechecked the downstream line leading from the main panel to determine if the electricity was off. He found electricity on the line. On further

inquiry, L P & L's foreman assured the crew chief that the electricity was shut off at the transformers and suggested the electrical reading represented residue or static electricity which would drain off. The crew chief attempted to ground the main panel by connecting a No. 10 copper wire to three "buses" located on the back of the panel. Shortly thereafter, the copper wire disintegrated, a series of explosions followed and a fire started in the main switch panel. The fire and explosion destroyed the main switch and damaged the main panel network and steam room where the equipment was located.

By various counts in its petition, Page and Wirtz brought actions against L P & L, Deaver & Vickery, and Westinghouse. Its actions against L P & L and Deaver & Vickery were based on negligence. In response to special issues, the jury found, in pertinent part, that: (1) L P & L negligently failed to place the southwest network protector (*i.e.* the two internally connected transformers and related equipment) in the open position and that such negligence was a proximate cause of the fire and explosion; (2) Deaver & Vickery "grounded the main panels with a No. 10 copper wire at a time and under circumstances when same could not be done safely," that such action was negligence and that such negligence was a proximate cause of the fire and explosion; and (3) Deaver & Vickery failed to determine whether the electricity could come on to the main panels, that such failure was negligence, and that such negligence was a proximate cause of the fire and explosion.

Page and Wirtz's action against Westinghouse was grounded on strict liability, negligence and breaches of implied warranties with a claim for treble damages under the DTPA. As to Westinghouse, the jury found, in pertinent part, that: (1) Westinghouse negligently failed to correct the malfunctions of the Pringle switch (*i.e.* main switch) on the main panels, but that such failure was *not* a proximate cause of the fire and explosion; and (2) the Pringle switch sold by Westinghouse was not reasonably fit for the purpose of acting as a

main switch on the main panel, and that such unfitness was a producing cause of the fire and explosion. The jury further found that $96,901.54 was the reasonable and necessary cost to restore the damaged property to its condition immediately before the fire and explosion.

In its judgment, the court decreed that Page and Wirtz recover from Westinghouse, the City of Lubbock (L P & L), and Deaver & Vickery, jointly and severally, the sum of $96,901.54 plus the sum of $25,182.69 as prejudgment interest. The court further ordered that Page and Wirtz recover from Westinghouse the sum of $193,803.08, as damages, the sum of $50,365.38, as prejudgment interest, and the sum of $9,000 as attorneys fees under the DTPA. The City of Lubbock (L P & L) and Deaver & Vickery do not appeal from the judgment.

Our disposition of Westinghouse's fourth point of error and Page and Wirtz's third cross-point is dispositive of this appeal. In its fourth point of error, Westinghouse claims that Page and Wirtz's recovery for treble damages and attorneys fees under the DTPA must be reversed because the evidence is factually insufficient to support a deemed finding that Page and Wirtz is a "consumer."

 To recover treble damages and attorneys fees under the DTPA, Page and Wirtz is required to establish that it was a "consumer" under the Act, *Farmers and Merchants Bank v. Ferguson,* 617 S.W.2d 918 (Tex.1981), at the time the *acts* occurred *which gave rise* to its cause of action. *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977). To be a consumer, Page and Wirtz does not have to establish contractual privity with Westinghouse. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 540–41 (Tex.1980), and the cases cited and discussed therein.

 The evidence shows that Page and Wirtz is and has been a corporation since 1965. Before 1 September 1975, corporations were not included in the definition of

"consumer" under the Act. However, effective 1 September 1975, the Act was amended to read that " 'consumer' means an individual, partnership or *corporation* who *seeks or acquires by purchase* or lease, any 'goods or services." (emphasis added). 1975 Tex.Gen.Laws, ch. 62, § 17.45(4) at 149. The act does not define the terms "seeks" or "acquires by purchase." In the absence of specific definition, the terms should be given their common meaning. "Seek" means "to request" or "ask for" the goods.[1] "Acquire" means "to get or come to have as one's own." [2] Thus, we conclude the goods are "acquired" when the purchaser gets them (*i.e.* when the property is actually and physically delivered to him).

Additionally, to recover treble damages and attorneys fees under the Act, Page and Wirtz is required to establish that the *acts which gave rise* to its cause of action occurred on or after 1 September 1975. Its recovery under the Act is grounded solely on the breach of an implied warranty (*i.e.* the jury's finding that the Pringle Switch sold by Westinghouse was not reasonably fit for the purpose of acting as a main switch on the main panel). The act which gave rise to that cause of action is the *breach* of the implied warranty. The breach of an implied warranty relates to the condition of the property at the time of its actual and physical delivery to the purchaser. *See White Oldsmobile Co. v. Jones Apothecary, Inc.,* 337 S.W.2d 834 (Tex.Civ. App.—Houston 1960, writ ref'd n.r.e.).

 Applying the above discussed principles to the present case, Page and Wirtz is required to show that it sought or acquired by purchase the Pringle switch on or after 1 September 1975 and that the breach of implied warranty occurred on or after that date. To establish these essential elements, Page and Wirtz must show the switch was actually and physically delivered to it on or after 1 September 1975 (*i.e.* that it actually got the equipment on or after that date). The evidence shows that a consulting engi-

---

1. *See* Webster's New World Dictionary, 1289 (2d College ed. 1980).

2. *Id.* at 12.

neer (hired by the City of Lubbock) inspected the main panel network at the Civic Center in late September of 1975 and determined that the Pringle switch was not operating correctly. In early October of 1975, Westinghouse's field representative inspected the main panel network and verified that the Pringle switch was not operating properly. However, the evidence fails to show with any degree of certainty the date on which Page and Wirtz got or acquired the equipment. Accordingly, we must conclude that the evidence is factually insufficient to support a deemed finding that Page and Wirtz is a consumer and that the act which gave rise to its cause of action (i.e. the breach of the implied warranty) occurred on or after 1 September 1975. Westinghouse's fourth point of error is sustained.

By its third cross-point, Page and Wirtz claims the trial court erred by refusing to submit its requested proximate cause issue. To recover consequential damages for Westinghouse's breach of the implied warranty (i.e. that the Pringle switch sold by Westinghouse was not reasonably fit for the purpose of acting as a main switch on the main panel), Page and Wirtz is required to establish that the breach of the implied warranty was a proximate cause of the fire and explosion. See Tex.Bus. & Com.Code Ann. § 2.314 (Vernon 1968). Page and Wirtz requested the trial court to submit the essential proximate cause issue; however, the trial court refused and omitted the requested issue from the charge.

■ In determining whether the trial court committed reversible error by refusing the essential proximate cause issue, we must determine if there is some probative evidence to raise that issue (i.e. whether the evidence is legally sufficient to raise the proximate cause issue). In this regard, it is settled in Texas that proximate cause consists of two concepts: (1) cause in fact (i.e. a cause which produces an event without which the events would not have occurred); and (2) foreseeability (i.e. that a person of ordinary intelligence should have foreseen that the injurious event in ques-

tion or a similar one could have occurred as a result of his action). See Missouri Pac. R. Co. v. American Statesman, 552 S.W.2d 99, 100–04 (Tex.1977). Proximate cause may be established by either direct or circumstantial evidence. See Farley v. M.M. Cattle Company, 529 S.W.2d 751 (Tex.1975).

■ In the present case, the evidence shows that the purpose of the Pringle switch was to shut off the electricity downstream from the main panel network. Several witnesses testified that if the Pringle switch had worked properly (i.e. shut off the electricity), there would have been no accident (i.e. the fire and explosion). Thus, there is some probative evidence to show causation in fact. The evidence further shows that there were approximately 480 volts of electricity on the line leading from the transformer network to the main panel network. Westinghouse knew the Pringle switch was not operating correctly. Thus, we are persuaded that the evidence shows that by exercising ordinary intelligence, Westinghouse should have foreseen that the injurious event in question or a similar event could have occurred as a result of the Pringle switch's malfunction. Accordingly, we conclude that the essential proximate cause issue was raised by the evidence. Page and Wirtz's third cross-point is sustained.

In its brief, Page and Wirtz contends that the evidence is factually sufficient to deem that the proximate cause issue was found by the trial court in such manner as to support the judgment. Conversely, Westinghouse claims the evidence is factually insufficient to support such a deemed finding. We do not consider the merits of either contention because Page and Wirtz's request for the omitted proximate cause issue precludes a deemed finding on that issue. See Tex.R.Civ.P. 279; and e.g. Dittberner v. Bell, 558 S.W.2d 527 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

In summary, Westinghouse's fourth point of error and Page and Wirtz's third cross-point are sustained. Westinghouse's appeal challenges those portions of the judgment which decree recoveries against it. The

City of Lubbock (*i.e.* L P & L) and Deavers & Vickery did not perfect appeals from the judgment. Accordingly, the judgment is affirmed as to the City of Lubbock and Deavers & Vickery. However, those portions of the judgment which decree recoveries against Westinghouse by Page and Wirtz are reversed, Page and Wirtz's action against Westinghouse for breach of implied warranty and its claim against Westinghouse for damages under the DTPA are severed, and those actions are remanded to the trial court for a new trial.

Our disposition of Westinghouse's point of error and Page and Wirtz's third cross-point is dispositive of this appeal; however, we have considered Westinghouse's remaining points and Page and Wirtz's remaining cross-points and we conclude that such points and cross-points do not present cause for the rendition of a different disposition of this appeal.

We adjudge fifty percent (50%) of the costs against Westinghouse and fifty percent (50%) of the costs against Page and Wirtz.