McALLEN STATE BANK, Appellant,

v.

LINBECK CONSTRUCTION CORPORATION, Appellee.

No. 13–84–085–CV.

Court of Appeals of Texas, Corpus Christi.

March 28, 1985.

Rehearing Moot May 2, 1985.

**14**

Charles C. Murray, Atlas & Hall, McAllen, for appellant.

James E. Ross, Ross, Griggs & Harrison, Houston, Russell McMains, Corpus Christi, O.C. Hamilton, Jr., Ewers & Toothaker, McAllen, Edward O. Garcia, Stone & Thompson, Corpus Christi, for appellee.

## OPINION

UTTER, Justice.

McAllen State Bank (Bank) originally brought suit against Linbeck Construction Corporation (Linbeck) alleging (1) certain breaches of express warranties regarding the quality of workmanship and materials and (2) certain misrepresentations regarding the characteristics of certain modifications in connection with Linbeck's construction of a building for the Bank. The Bank further alleged that the breaches of warranties and misrepresentations violated the Deceptive Trade Practices—Consumer Protection Act (DTPA), TEX.BUS. & COMM. CODE § 17.41 et seq. (Vernon Supp.1985). Industrial Risk Insurers (Industrial Risk), the Bank's subrogee, intervened in the suit. The suit was tried before a jury, which returned its verdict in favor of the Bank. Based upon the jury's verdict and the parties' stipulations, the trial court awarded actual damages, reasonable attorney's fees, post-judgment interest and court costs but refused to award prejudgment interest and treble damages pursuant to the DTPA. From this judgment, the Bank has appealed complaining that the trial court erred by failing to award treble damages pursuant to the DTPA, and Linbeck has brought a cross-appeal complaining about the admission of certain evidence and about alleged factual and legal sufficiency of the evidence to support the judgment. We reform and, as reformed, affirm the judgment of the trial court.

On April 28, 1977, the Bank (as owner) and Linbeck (as contractor) entered into a written contract, wherein Linbeck agreed to be the general contractor for the construction of a seventeen-story building in McAllen for the Bank. Linbeck expressly warranted (1) that "all Work will be of good quality, free from faults and defects and in conformance with the Contract Documents" and (2) that it would use high quality materials, suitable for the function intended and of good appearance when exposed to view. The contract provided that "[t]he Date of Substantial Completion of the Work or designated portion thereof is the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can occupy or utilize the Work or designated portion thereof for the use for which it is intended" and that the "[w]arranties required by the Contract

Documents shall commence on the Date of Substantial Completion or designated portion thereof unless otherwise provided in the Certificate of Substantial Completion." The contract also contained a liquidated damages provision for construction delays.

Construction on the bank building under the contract began in May 1977. During the construction, Linbeck implemented a modified skylight design and an alternative expansion joint waterproofing system between the tower of the building and the promenade deck at the third floor. The first four floors (the banking portion of the building) were certified by the architect "to be substantially complete" and ready for occupancy on February 19, 1979. At that time, the Bank moved into the banking portion of the building and began its banking operations. The remaining portions (the tenant or non-banking portions) of the building were certified "to be substantially complete" and ready for occupancy by August 7, 1979.

In August 1980, Hurricane Allen came ashore north of Brownsville and brought with it high winds and heavy rains to the McAllen area. During the storm, the bank building sustained significant wind and water damage. Large portions of the sloping metal roof system between the second and third floors of the building were blown off. Water leaked into the building from the following areas of the building: the window wall/precast fin system on the sides of the building, the sloping metal roof system between the second and third floors, the expansion joint system between the tower of the building and the promenade deck at the third floor, and the skylights. As a result of the leaking, the building's interior, including a large amount of wall-covering and carpet, sustained heavy water damage.

Prior to the storm but after the Bank moved into the building, the Bank had already detected problems with the building's construction. The Bank was dissatisfied with the installation of the concealed spline ceiling tile system on the first and second floors of the building. Also, the Bank no-

ticed that the sky-lights and the expansion joint leaked. Following numerous complaints by the Bank to Linbeck, Linbeck represented that it had performed necessary repairs to correct the problems.

After the storm and after Linbeck had attempted to undertake some repairs of storm damages, the Bank retained 3D/International (3D/1) (the building's original architect), Valcon, Inc. (Valcon) (as general contractor) and miscellaneous others to correct alleged construction defects and to repair the damages to the building.

Based upon the pleadings, the parties litigated at trial concerning six alleged defective areas of work: (1) the window wall/precast fin system on the sides of the building; (2) the sloping metal roof system between the second and third floors; (3) the expansion joint waterproofing system between the tower of the building and the promenade deck at the third floor; (4) the skylights; (5) caulking at the reglet area of the sloping metal roof, parapet walls and wing walls; and, (6) the concealed spline ceiling tile system on the first and second floors. At the conclusion of the trial, the jury, in response to the special issues submitted, returned its verdict in favor of the Bank on all of the submitted issues. Based upon the jury's findings and the parties' stipulations, the trial court in its judgment (1) awarded $453,563.00 to the Bank and $506,537.00 to Industrial Risk (intervenor and the Bank's subrogee), for a total of $960,000.00, the total amount of actual damages found by the jury under each of the theories of recovery for breach of warranty (workmanship and materials), (2) awarded, as a matter of law, $6,600.00 to the Bank as liquidated damages for delays in substantial completion of the building, (3) awarded the Bank reasonable attorney's fees in the amount of $170,000.00 and post-judgment interest and (4) assessed court costs against Linbeck.

Since Linbeck in its cross-appeal primarily challenges the admission of certain evidence and the sufficiency of the evidence to support the trial court's judgment, we will first consider the cross-points of error

raised in Linbeck's cross-appeal before considering the Bank's contention in its appeal that the trial court erred by failing to award treble damages pursuant to the DTPA.

## LINBECK'S CROSS–APPEAL

In its fourth cross-point of error, Linbeck complains about the admission of bank's Exhibits Nos. 77 and 78. Both exhibits are duplicate computer printouts, which give an accounting summary/breakdown of charges for work performed by Valcon; and, Bank's Exhibit No. 78, unlike Bank's Exhibit No. 77, contains notations made by Bill Rogers, Valcon's general superintendent who identified and testified regarding the exhibit, allocating the charges to various aspects of the job.[1]

*First,* Linbeck argues that the computer printouts were inadmissible because each was "a summary of underlying [business] records" for which "a proper predicate for their admission had not been laid." More specifically, Linbeck argues that, since the underlying records allegedly had never been made available to it by the Bank, the requisites for the admission of a summary of underlying business records under *Duncan Development, Inc. v. Haney,* 634 S.W.2d 811 (Tex.1982), were not met.

In *Duncan Development, Inc. v. Haney,* the Texas Supreme Court wrote:

A summary of business records may be admitted into evidence upon proof of an additional predicate. This includes proof (1) that the records are voluminous, (2) they have been made available to the opponent for a reasonable period of time to afford inspection and an opportunity for cross-examination, and (3) the supporting documents are themselves admissible in evidence. *Black Lake Pipeline Co. v. Union Construction Co.,* 538 S.W.2d 80, 93–94 (Tex.1976); *Cooper v. La Gloria Oil and Gas Co.,* 436 S.W.2d 889, 891 (Tex.1969).

*Duncan Development, Inc. v. Haney,* 634 S.W.2d at 812–813. However, *Duncan Development, Inc. v. Haney* dealt with a summary of invoices from its "some three dozen subcontractors" that was prepared for trial purposes; whereas, here, we are dealing with two computer printout summary/breakdowns that, although each is a summary of underlying business records (labor and materials records), are themselves business records. Therefore, the computer printouts were entitled to be treated as business records, and not as a summary of business records for trial purposes. *See Marquis Construction Company, Inc. v. Johnson Masonry,* 665 S.W.2d 514 (Tex.App.—Houston [1st Dist.] 1983, no writ); *See also Hodges v. Peden,* 634 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1982, no writ); *Voss v. Southwestern Bell Telephone Company,* 610 S.W.2d 537 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd. n.r.e.).

*Secondly,* Linbeck argues that the Bank did not establish the additional predicate allegedly required for the admission of computer printouts, which are business records. Relying on *O'Shea v. International Business Machines Corporation,* 578 S.W.2d 844 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd. n.r.e.), and *Railroad Commission v. Southern Pacific Railway Company,* 468 S.W.2d 125 (Tex.Civ.App.—Austin 1971, writ ref'd. n.r.e.), Linbeck suggests that, in addition to the requirements for admission of business records under the business records statute, TEX.REV.CIV.STAT.ANN. art. 3737e (Vernon Supp.1985) (now embodied in TEX.R. EVID. 803(6)), the Bank had to prove that "the computer equipment utilized is recognized as standard equipment and that the records were prepared by persons who understood the operation of the equipment and whose regular duty was to operate it," before the computer printouts were admissible. However, the Houston (1st District) Court of Civil Appeals in *Voss v. Southwestern Bell Telephone Company,* 610

---

1. The noted aspects of the job to which Rogers allocated the charges on Bank's Exhibit No. 78 were: general expenses (G), metal roof (MR), expansion joint (EJ), sewer line (SL), precast fins (PF), unrelated expenses (UR) and miscellaneous caulking (MC).

S.W.2d 537 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd. n.r.e.), wrote the following:

> The legislature did not see any necessity for additional requirements where the records sought to be introduced into evidence were electronically produced. Once the requirements as above set out [in Art. 3737e] are met the records are admissible and are to be given whatever weight they are entitled to.

*Voss v. Southwestern Bell Telephone Co.,* 610 S.W.2d at 538.

Accordingly, we likewise hold that, contrary to Linbeck's suggestion, the Bank was not required to prove the alleged additional predicate for the admission of the computer printouts, which are business records. Furthermore, after reviewing the record, we find that the standard requirements for the admission of business records under the business records statute and the additional predicate urged by Linbeck were sufficiently proven by the testimony of Raymond Champion, the chief accountant for Valcon through whom the computer printouts were introduced into evidence.

■ In arguing that the admission of the computer printouts constituted reversible error, Linbeck implies that the duplicate computer printouts were the *only* evidence of the amount of reasonable and necessary repair costs attributable to Valcon's repair work resulting from the construction defects. Linbeck suggests (1) that, since the computer printouts were summary/breakdowns of charges contained in Valcon's bill (Bank's Exhibit No. 76), the trial court erroneously admitted the computer printouts because they contained certain alleged unrelated charges and (2) that the jury's findings necessarily included amounts for the unrelated charges.

However, we note (1) that Linbeck did not object to the admission of the computer printouts on the basis that they contained the unrelated charges and (2) that, even though the computer printouts were supposed to be duplicate computer printout summary/breakdowns of charges contained in Valcon's bill (Bank's Exhibit No. 76), the total amounts of charges in the computer printouts do not correlate to the total amount of charges in Valcon's bill.[2] There is no indication that Valcon's bill necessarily contained the unrelated charges. Also, we note that Valcon's bill was admitted without objection from Linbeck. Furthermore, we note that, as noted by Linbeck in its brief, Bill Rogers, Valcon's general superintendent through whom Valcon's bill was introduced into evidence, testified that the charges contained in Valcon's bill were "reasonable and necessary to correct the construction defects found at the McAllen State Bank project after the hurricane damage." Thus, the jury's findings regarding damages relating to charges for Valcon's repair work could have properly been based upon Valcon's bill, were not necessarily based *only* upon the computer printouts and did not necessarily include any amounts for the unrelated charges. Therefore, we hold that the trial court did not reversibly err in admitting the computer printouts into evidence. Linbeck's fourth cross-point of error is overruled.

In its fifth through eighth cross-points of error, Linbeck asserts that there is no evidence or insufficient evidence to support the jury's findings regarding damages in response to Special Issues Nos. 3, 6, 9 and 13 (the damages issues). In its ninth cross-point of error, Linbeck asserts that the jury's findings in response to the damages issues are manifestly excessive because the damage awards include "elements that are not legally recoverable or supported by sufficient evidence."

2. 

| Exhibits | Amounts |
|---|---|
| Valcon's computer printout summary/breakdowns (Bank's Exhibits Nos. 77 & 78) (dated 9/31/82) | |
| Total Job Cost to Date | 630,174.55 |

| Exhibits | Amounts |
|---|---|
| Estimated Costs Remaining | 369,882.53 |
| Valcon's bill (Bank's Exhibit No. 76) (dated 8/19/82) | |
| Total Contract to Date | 737,306.00 |

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and, CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

▆ At trial, the jury was given the following instruction in conjunction with the submission of each of the damages issues:

In connection with this special issue you are instructed that the term "damage" means either

(1) The fair and reasonable costs of restoring the building to the same condition as it existed immediately before any occurrence which caused physical detriment to the building, or

(2) The fair and reasonable cost of bringing the building into compliance with the contract documents in those instances, if any you have found, in which the original construction was not in compliance with such documents. No element of damage may fall under both (1) and (2) above.

On appeal, Linbeck does not expressly challenge the propriety of the remedial measure of damages, although it cites cases which involve the question of propriety of the remedial measure of damages. Since Linbeck did not object to the court's charge on the ground that it submitted an improper measure of damages, Linbeck waived the objection and cannot expressly or impliedly complain on appeal that the court's charge permitted the jury to find damages based upon the wrong measure of damages. TEX.R.CIV.P. 274; *Tom Benson Chevrolet, Inc. v. Alvarado,* 636 S.W.2d 815 (Tex.App.—San Antonio 1982, writ ref'd. n.r.e.); *Corpus Christi Bank & Trust v. Roberts,* 587 S.W.2d 173 (Tex.Civ. App.—Corpus Christi 1979), affirmed 597 S.W.2d 752 (Tex.1980); *Lanphier Construction Company v. Fowco Construction Company,* 523 S.W.2d 29 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.

e.). Furthermore, we hold that the remedial measure of damages was clearly appropriate under the facts of this case. *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d 878 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Jim Walter Homes, Inc. v. Castillo,* 616 S.W.2d 630 (Tex.Civ.App.—Corpus Christi 1981, no writ); *Greene v. Bearden Enterprises, Inc.,* 598 S.W.2d 649 (Tex.Civ. App.—Fort Worth 1980, writ ref'd. n.r.e.).

An analysis of Linbeck's arguments under its fifth through ninth cross-points of error reveals basically three complaints: *First,* Linbeck complains that the damages awarded the Bank by the jury included certain items that are allegedly not recoverable as a matter of law. Linbeck alleges that the jury's findings regarding damages based upon "the Bank's damage proof" contained amounts, which represent "numerous items relating to new designs" and/or "improvements" to the building over the original design and "which should not be allowed as a matter of law"; thereby, the Bank was placed in a position beyond that in which it would have been but for Linbeck's contractual breaches.

Linbeck relies upon *Burlington-Rock Island Railway Company v. Newsom,* 239 S.W.2d 734 (Tex.Civ.App.—Waco 1951, no writ), wherein the Waco Court of Civil Appeals wrote:

"The fundamental purpose underlying all rules for the measurement of damages is to indemnify an aggrieved party for the pecuniary loss suffered by him, so as to place him as nearly as possible in the same position he would have occupied but for the injury of which he complains."

*Burlington-Rock Island Railway Company v. Newsom,* 239 S.W.2d at 736.

In reliance on *Burlington-Rock Island Railway Company v. Newsom,* Linbeck then argues that the purpose of the remedial measure of damages does not include improving an injured party's position beyond that in which he would have been but for the contractual breaches and, accordingly, suggests that the Bank's recovery should have been limited to the reasonable cost of repairs according to the original design and should not have included the

amounts for the alleged "new designs" and/or "improvements" to the building. Linbeck then claims that, among the repairs, the sloping metal roof system and the expansion joint waterproofing system were redesigned and/or improved over the original design to correct the construction defects.

■ There is testimony indicating (1) that the alleged "new designs" and/or "improvements" to the sloping metal roof system and the expansion joint waterproofing system were reasonable and necessary design modifications (a) to correct the construction defects and (b) to insure that the sloping metal roof was securely anchored and the expansion joint was made watertight in accordance with the contract and (2) that all repairs done, including the replacement of all new steel roof panels, were reasonable and necessary;[3] thereby, the Bank was placed "as nearly as possible" in the position it would have been but for Linbeck's contractual breaches. Based upon the probativeness of this testimony, we hold that, under the facts of this case, the items (the alleged "new designs" and/or "improvements"), about which Linbeck complains, were properly recoverable.

3. All new steel roof panels were installed (instead of just replacing those more expensive aluminum roof panels that previously comprised the sloping metal roof system but that were blown off or damaged) to prevent a "patched look" and to insure the integrity of the sloping metal roof system.

4. *Summary of Damages Exhibits*

| Exhibit No. | Description | Amount |
|---|---|---|
| 61 | Fowler (consulting engineer) statement | 2,279.45 |
| 62 | Fowler (consulting engineer) statement | 1,702.40 |
| 63 | Fowler (consulting engineer) statement | 2,132.44 |
| 73 | 3D/International (architect) invoices | 19,337.67 |

Note: Bank's Exhibits Nos. 77 & 78 (Valcon's computer printout summary/breakdowns), the

*Secondly*, Linbeck complains, in essence, about the "broad submission" of the damages issues. Linbeck predicates its complaint on the following: (a) the damages found by the jury included "an undisclosed and incalculable amount of consequential damages ... without any evidence upon which to base any finding that the damage was initially caused as a result of Linbeck's breaches"; (b) "there are no underlying traceable records that were ever produced that established precisely what was done and what expenditures were incurred" relative to each of the six alleged defective areas of work to support the jury's allocation of the total amount of damages (both directed and consequential) to each of the six alleged defective areas of work; and, (c) there was no separate submission of special issues requiring the jury to determine whether any particular item of repair was reasonable and necessary.

■ We find that there was evidence presented at trial to support the total amount of damages that were found by the jury under each of the two theories of recovery for breach of warranty (workmanship and materials).[4] We also find that there was testimony presented at trial from

| Exhibit No. | Description | Amount |
|---|---|---|
| 74 | 3D/International (architect) invoices | 44,818.48 |
| 75 | 3D/International (architect) invoices | 16,916.12 |
| 76 | Valcon, Inc. (general contractor) bill Total Contract to Date charges | 737,306.00 |
| 79 | Palmer (replacement glass contractor) estimate | 76,700.00 |
| 123 | invoice for sprinkler system repair | 561.00 |
| 124 | invoice for debris handling | 250.00 |
| 129 | Jones & Jones (wallcovering & carpet contractor) invoice | 61,622.97 |
| Total Amount of Damages Proven by Damages Exhibits | | 963,665.97 |

subject of Linbeck's fourth cross-point of error, are not included in the above summary.

which the jury could have found that the repair costs were both reasonable and necessary. Included in that evidence were charges for both direct and consequential damages which proximately resulted from Linbeck's contractual breaches; so, neither were the consequential damages "undisclosed and incalculable" nor were they not found by the jury to have been "initially caused as a result of Linbeck's alleged breaches." In addition, we hold that, since there was evidence to support the total amount of damages (both direct and consequential), if recoverable, under each of the two theories of recovery for breach of warranty (workmanship and materials) that were found by the jury, it was within the jury's discretion to allocate the total amount of damages (both direct and consequential) to each of the six alleged defective areas of work.

■■■ Furthermore, since Linbeck did not object to the form or manner of the submission of the damages issues, we hold (1) that, under TEX.R.CIV.P. 274, Linbeck has waived its complaint regarding the form or manner of the "broad submission" of the damages issues and (2) that, under TEX.R.CIV.P. 279, the trial court did not err in discretionarily allowing the "broad submission" of the damages issues, which did not require separate findings for direct and consequential damages and which did not require separate findings regarding whether any particular item of repair was reasonable and necessary.

■■■ *Thirdly,* Linbeck complains about the admission of testimony and exhibits regarding (a) charges for architectural and engineering services relating to the repair work and (b) charges for replacement of water-damaged wallcovering and carpet. Concerning the charges for the architectural and engineering services, Linbeck argues that "the testimonial basis for this evidence was merely that all services were necessary to correct 'defects.'" We note (1) that the exhibits (bills/invoices) (Bank's Exhibits Nos. 61, 62, 63, 73, 74 and 75) reflecting the architectural and engineering charges were admitted into evidence with-

out objection from Linbeck, (2) that there was testimony that these charges were reasonable and necessary and (3) that there was testimony regarding how the charges should be apportioned to the six alleged defective areas of work. We hold that the trial court did not err by admitting the testimony and exhibits regarding charges for the architectural and engineering services relating to the repair work.

Concerning the charges for the replacement wallcovering and carpet, Harvey Kowalski, an interior designer for Jones & Jones (the wallcovering and carpet contractor), testified by deposition that the charges were comparable with what would be charged elsewhere. Kowalski also testified that the charges for the replacement wallcovering and carpet were reasonable and necessary.

■■■ It is apparently Linbeck's complaint that Kowalski was not qualified to testify as an expert regarding the reasonableness of the charges for the replacement wallcovering and carpet because he was allegedly unfamiliar with the charges for similar merchandise that could have been obtained from other contractors. We hold (1) that the trial court did not abuse its discretion in impliedly finding that Kowalski was qualified to testify as an expert regarding such matters and (2) that the trial court did not err by admitting the testimony and exhibit regarding the charges for the replacement wallcovering and carpet. Linbeck's fifth through ninth points of error are overruled.

In its first through third cross-points of error, Linbeck challenges the sufficiency of the evidence to support the jury's findings in response to Special Issues Nos. 4, 5 and 6 regarding Linbeck's alleged breach of its materials warranty.

■■■ *First,* Linbeck argues, in essence, that there is an inherent inconsistency or conflict between (1) the jury's findings in response to Special Issue No. 6 regarding the damages resulting from Linbeck's alleged breach of its materials warranty and (2) the identical jury's findings in response

to Special Issue No. 3 regarding damages resulting from Linbeck's alleged breach of its workmanship warranty. Assuming that said findings are supported by sufficient evidence and that the amounts awarded are recoverable relative to each of the six alleged defective areas of work on each of the theories of recovery for breach of warranty (workmanship and materials), we hold that there is no inherent inconsistency or conflict between the identical damages findings for each theory of recovery for breach of warranty (workmanship and materials). The two wrongs (i.e., the breach of the workmanship warranty and the breach of the materials warranty) could have combined to produce an indivisible injury. *See Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731 (1952); *Bristol-Myers Company v. Gonzalez*, 548 S.W.2d 416 (Tex.Civ. App.—Corpus Christi 1976), reversed on other grounds 561 S.W.2d 801 (Tex.1978).

■ *Secondly*, Linbeck argues that the evidence was insufficient to support the jury's findings in response to Special Issues Nos. 4 and 5 (the liability issues relating to Linbeck's alleged breach of its materials warranty). However, we note that Linbeck does not challenge the sufficiency of the evidence to support the jury's findings in response to Special Issues Nos. 1 and 2 (the corresponding liability issues relating to Linbeck's alleged breach of its workmanship warranty). After having reviewed the entire record, we have found sufficient evidence to support the jury's findings in response to Special Issues Nos. 1 and 2 (the liability issues relating to Linbeck's alleged breach of its workmanship warranty); and, as we have held above, there is sufficient evidence to support the total amount of damages, as found by the jury in response to Special Issue No. 3 (the damages issue relating to Linbeck's alleged breach of its workmanship warranty) relative to each of the six alleged defective areas of work under the breach of workmanship warranty theory of recovery. Thus, the trial court could have based its judgment awarding that total amount of actual damages based upon the Bank's en-

titlement to a recovery under its breach of workmanship warranty theory of recovery, and not under its breach of materials warranty theory of recovery, an alternative theory of recovery. Therefore, the alleged error, if any, would constitute harmless error. TEX.R.CIV.P. 434; *See City of Lubbock v. Onley*, 498 S.W.2d 429 (Tex. Civ.App.—Amarillo 1973, writ ref'd. n.r.e.); *See also Tex-Jersey Oil Corp. v. Beck*, 157 Tex. 541, 305 S.W.2d 162 (1957); *Hawes v. Central Texas Production Credit Association*, 492 S.W.2d 714 (Tex.Civ.App.—Austin 1973), affirmed 503 S.W.2d 234 (Tex.1973); *Texas Crushed Stone Co. v. Weeks*, 390 S.W.2d 846 (Tex.Civ.App.—Austin 1965, writ ref'd. n.r.e.). Linbeck's first through third cross-points of error are overruled.

## BANK'S APPEAL

In its four points of error, the Bank asserts that the trial court erred by refusing to award mandatory treble damages pursuant to the DTPA. The resolution of the Bank's appeal depends on whether the case was governed by the 1975, 1977 or 1979 version of the DTPA and whether, under the applicable version, the Bank was entitled to mandatory treble damages.

■ Only a "consumer," as defined in § 17.45(4), has standing to sue under the DTPA. TEX.BUS. & COMM.CODE ANN. § 17.50(a) (Vernon Supp.1985); *See* Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535 (Tex.1981); Riverside National Bank v. Lewis, 603 S.W.2d 169 (Tex.1980).

Under the 1975 version of the DTPA, § 17.45(4) defined a "consumer" as follows:

(4) "Consumer" means an individual, partnership or corporation who seeks or acquires by purchase or lease any goods or services.

Also, under the 1975 version, "goods" and "services" were defined in § 17.45(1) and (2) as follows:

(1) "Goods" means tangible chattels, or real property purchased or leased for use.

(2) "Services" means work, labor or service purchased or leased for use, for other than commercial or business use, including services furnished in connection with the sale or repair of goods.

Therefore, under the 1975 version, a corporation (such as the Bank) had standing to sue as a "consumer" under the DTPA for goods, but not services, that were purchased for commercial or business use.

■■■ Under the 1977 and 1979 versions of the DTPA, § 17.45(4) defined a "consumer" as follows:

(4) "Consumer" means an individual, partnership, corporation or governmental entity who seeks or acquires by purchase or lease, any goods or services.

Also, under the 1977 and 1979 versions, "goods" and "services" were defined in § 17.45(1) and (2) as follows:

(1) "Goods" means tangible chattels, or real property purchased or leased for use.

(2) "Services" means work, labor or service purchased or leased for use, including services furnished in connection with the sale or repair of goods.

Therefore, under the 1977 and 1979 versions, a corporation (such as the Bank) had standing to sue as a "consumer" of the DTPA for both goods and services purchased for commercial or business use.

■■■ It is clear that, in contracting with Linbeck for the construction of the building, the Bank, a corporation, purchased goods and services for commercial or business use. *See Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977); *Jim Walter Homes, Inc. v. Mora,* 622 S.W.2d 878 (Tex.App.—Corpus Christi 1981, no writ); *Jim Walter Homes, Inc. v. Chapa,* 614 S.W.2d 838 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd. n.r.e.); *See also Wolfe Masonry, Inc. v. Stewart,* 664 S.W.2d 102 (Tex.App.—Corpus Christi 1983, no writ).

Under the 1975 and 1977 versions of the DTPA, § 17.50(b)(1) provided that each consumer who prevailed in a DTPA action was entitled to "three times the amount of actual damages," and the award of treble damages was mandatory. *See Woods v. Littleton,* 554 S.W.2d 662 (Tex.1977); *De Los Santos v. Alamo Lumber Co.,* 683 S.W.2d 48 (Tex.App.—San Antonio 1984, no writ). However, under the 1979 version of the DTPA, § 17.50(b)(1) provided that:

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of actual damages found by the trier of fact. In addition, the court shall award two times that portion of the actual damages that does not exceed $1,000.00. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may not award more than three times the amount of actual damages in excess of $1,000.00;

Regarding the 1979 version of § 17.-50(b)(1), the Texas Supreme Court in *Martin v. McKee Realtors, Inc.,* 663 S.W.2d 446 (Tex.1984) wrote:

Under § 17.50, three types of damages may be awarded. First, the trier of fact may award actual damages. Second, if actual damages are so found, it is mandatory that the court award additional statutory damages in the amount specified. Third, if the trier of fact finds that the defendant's conduct was knowingly committed, then the trier of fact may award discretionary damages up to a specified amount, or alternatively, not award them at all.

\* \* \* \* \* \*

Under the original wording of § 17.-50(b)(1) of the DTPA, the trebling of any actual damages was mandatory. *Woods v. Littleton,* 554 S.W.2d 662, 669 (Tex. 1977). In 1979, the Texas Legislature amended § 17.50(b)(1). They expressly made any award of the third type of damages under § 17.50(b)(1) within the discretion of the trier of fact, if such trier found that a defendant acted knowingly. In a jury trial, such as the one before us, it is the jury, and not the judge, that acts as the trier of fact. Only in the absence of a jury is the award, if any, of discretionary damages under the DTPA a question for the court.

It was within the jury's exclusive discretion, as mandated by § 17.50(b)(1), to determine whether or not an award of such damages under the DTPA was proper. In the instant case, the jury had no opportunity to pass upon this issue.

*Martin v. McKee Realtors, Inc.*, 663 S.W.2d at 447–448.

■ In the instant case, since the Bank failed to request and to have submitted the appropriate special issues to the jury, it is clear that the Bank has waived recovery of those "third type" of discretionary exemplary damages, if the 1979 version of the DTPA is applicable to this case. *Martin v. McKee Realtors, Inc.*, 663 S.W.2d 446 (Tex. 1984).

■ In addition, unlike the 1975 and 1977 amendments, the 1979 amendments to the DTPA contained a "savings clause," which provided:

"This act shall be applied prospectively only. Nothing in this act affects either procedurally or substantively *a cause of action that arose* either in whole or in part prior to the effective date of this act." (Emphasis supplied.)

Acts 1979, 66th Leg., p. 1327, ch. 603, § 9, eff. August 27, 1979. *Compare* Acts 1977, 65th Leg., p. 600, ch. 216, eff. May 23, 1977; Acts 1975, 64th Leg., p. 149, ch. 62, eff. September 1, 1975. The 1977 amendments to the DTPA became effective on May 23, 1977; and, the 1979 amendments to the DTPA became effective on August 27, 1979. Thus, it is clear that, pursuant to the above savings clause, the 1979 amendments of the DTPA, including the 1979 version of § 17.50(b)(1) relating to the "third type" of discretionary exemplary damages, do not apply to causes of action that have accrued, in whole or in part, prior to August 27, 1979, the effective date of the 1979 amendments. *See Miller v. Dickenson*, 677 S.W.2d 253 (Tex.App.—Fort Worth 1984, writ ref'd. n.r.e.); *See also, FDI Investment Corp. v. SSG Investments*, 663 S.W.2d 135 (Tex.App.—Fort Worth 1983, no writ); *ABC Truck Rental & Leasing Co. v. Southern County Mutu-*

*al Insurance Co.*, 662 S.W.2d 132 (Tex. App.—San Antonio 1983, no writ).

The record reflects that, although the parties had entered into the construction contract on April 28, 1977, before the effective date (May 23, 1977) of the 1977 amendments to the DTPA, the construction on the building under the contract began sometime in May 1977, and most of the construction work was performed after the effective date (May 23, 1977) of the 1977 amendments to the DTPA. In addition, the record reflects (1) that the first four floors (the banking portion of the building) were certified by the architect "to be substantially complete" and ready for occupancy on February 19, 1979; (2) that the remaining portions (the tenant or non-banking portions) of the building were certified "to be substantially complete" and ready for occupancy no later than August 7, 1979, prior to the effective date (August 27, 1979) of the 1979 amendments to the DTPA; and, (3) that the contract between the Bank and Linbeck provided that the workmanship and materials warranties commenced when the designated portions of the building had been certified "to be substantially complete" and ready for occupancy. Furthermore, the record reflects that, prior to the effective date (August 27, 1979) of the 1979 amendments to the DTPA, the Bank and some of its tenants occupied the building, some of the defective work had been detected, and some of the damage had already occurred.

■ The applicable version of the DTPA is the one in effect on the date of the acts, which give rise to the cause of action under the DTPA. *See La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984); *Riverside National Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980); *Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977); *De Los Santos v. Alamo Lumber Co.*, 683 S.W.2d 48 (Tex. App.—San Antonio 1984, no writ); *Westinghouse Supply Co. v. Page & Wirtz Constr. Co.*, 647 S.W.2d 44 (Tex.App.—Amarillo 1982, writ ref'd. n.r.e.). The act, which gives rise to a cause of action for

breach of warranty, is the *breach* of the warranty. *See La Sara Grain Co. v. First National Bank of Mercedes*, 673 S.W.2d 558 (Tex.1984); *Westinghouse Supply Co. v. Page & Wirtz Constr. Co.*, 647 S.W.2d 44 (Tex.App.—Amarillo 1982, writ ref'd. n.r.e.). *See also Haden Co., Inc. v. Johns-Manville Sales Corp.*, 553 S.W.2d 759 (Tex. 1977); *Teague Brick Sales Company v. Dewey*, 355 S.W.2d 249 (Tex.Civ.App.— Amarillo 1962, no writ); *Compare Wolfe Masonry, Inc. v. Stewart*, 664 S.W.2d 102 (Tex.App.—Corpus Christi 1983, no writ).

Since the warranties had not commenced until, at the earliest, February 19, 1979, but by, at the latest, August 7, 1979, the alleged breaches of the warranties (workmanship and materials) could not have occurred when the 1975 version of the DTPA was in effect; therefore, the 1975 version of the DTPA is inapplicable to this case. We hold that the 1979 version of the DTPA is inapplicable to this case and that this case is governed by the 1977 version of the DTPA. *See De Los Santos v. Alamo Lumber Co.*, 683 S.W.2d 48 (Tex.App.—San Antonio 1984, no writ).

As noted above, the Bank, a corporation, had standing to sue as a "consumer" under the 1977 version of the DTPA for both goods and services purchased for commercial or business use and, thus, was allowed to maintain an action for Linbeck's alleged breach of its workmanship warranty, as well as for Linbeck's alleged breach of its materials warranty, under the 1977 version of the DTPA. *See* TEX.BUS. &

COMM.CODE ANN. §§ 17.45(4) and 17.-50(a)(2) (Vernon Supp.1985).

Under the 1977 version of the DTPA, the Bank, as a "consumer" who prevailed on its action for breach of an express workmanship warranty under the DTPA, was entitled to mandatory treble damages in the amount of "three times the amount of actual damages" as found by the jury.[5] *See* TEX.BUS & COMM.CODE ANN. § 17.50(b)(1) (Vernon Supp.1985); *See also Woods v. Littleton*, 554 S.W.2d 662 (Tex.1977); *De Los Santos v. Alamo Lumber Co.*, 683 S.W.2d 48 (Tex.App.—San Antonio 1984, no writ). Therefore, we hold that the trial court erred by refusing to award mandatory treble damages to the Bank.

The portion of the judgment of the trial court awarding the Bank $960,000.00 in actual damages is REFORMED to award the Bank $2,880,000.00, which is "three times the amount of actual damages" found by the jury; and, as REFORMED, the judgment of the trial court is AFFIRMED.

Opinion published.

---

5. Linbeck also contends that, since Industrial Risk (intervenor and the Bank's subrogee) is not a "consumer" under the DTPA in this case but merely has a subrogation claim and since the Bank failed to meet its burden of differentiating between its "covered" and Industrial Risk's "non-covered" claims, the trial court "properly refused to treble the insurer's subrogation claim." As we have held above, the Bank is a "consumer" having standing to sue under the applicable 1977 version of the DTPA; Industrial Risk, as the Bank's subrogee, "stands in the shoes" of the Bank, its subrogor. *Fox v. Kroeger*, 119 Tex. 511, 35 S.W.2d 679 (1931); *Anchor Casualty Co. v. Robertson Transport Co.*, 389 S.W.2d 135 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd. n.r.e.).

Furthermore, there is nothing inconsistent (as suggested by Linbeck) about the Bank and Industrial Risk taking the position that Industrial Risk should recover only to the extent of its payment/subrogation claim and that the remainder of actual damages and all treble damages recovered should be awarded to the Bank. Under both the law and the subrogation agreement between the Bank and Industrial Risk, Industrial Risk is subrogated only to the extent of its payment. *Phipps v. Fuqua*, 32 S.W.2d 660 (Tex.Civ.App.—Amarillo 1930, writ ref'd.). Accordingly, we hold that Linbeck's contentions regarding the effect of Industrial Risk's intervention/subrogation claim are without merit.