Helen R. CURRAN, Appellant,

v.

Thomas C. UNIS, Temporary Administrator of the Estate of Charles G. Rick, Deceased, Helen G. Rick, Charles J. Rick, Lucia R. Biasatti, Louis J. Rick, J. Robert Rick, William F. Rick, George G. Rick, and Edward J. Mearsheimer, James R. Rick, and William F. Rick, as Co-Trustees of Rick Family Trust U/T/A Dated April 25, 1981, and Republicbank Dallas, N.A., Appellees.

No. 05–85–00844–CV.

Court of Appeals of Texas, Dallas.

April 2, 1986.

John A. Seib, Jr., Eric D. Ryan, Dallas, for appellant.

Randall Yazbeck, Thomas E. Kirkland, Robert D. Scoggins & Associates, Dallas, for appellees.

Harold H. Walker, Jr., Gardere & Wynne, Dallas, for appellee Republicbank Dallas, N.A.

Before STEPHENS, GUILLOT and STEWART, JJ.

GUILLOT, Justice.

Appellant, Helen R. Curran, appeals from a declaratory judgment rendered in favor of appellees: Thomas C. Unis (temporary administrator of the estate of Charles G. Rick, deceased), Helen G. Rick, Charles J. Rick, Lucia R. Biasatti, Louis J. Rick, J. Robert Rick, William F. Rick, George G. Rick, and Edward J. Mearsheimer, James R. Rick, and William F. Rick (as co-trustees of Rick Family Trust u/t/a, dated April 25, 1981), and RepublicBank Dallas, N.A. (as intervenor), (collectively referred to as "the Ricks"). For the reasons below, we reverse the judgment of the trial court and remand for a new trial.

Unis, as executor of the Charles G. Rick Estate, sought a declaratory judgment pursuant to the Uniform Declaratory Judgments Act, TEX.REV.CIV.STAT.ANN art. 2524–1 (Vernon Supp.1985)[1], to determine partnership interests in the Rick Furniture Company partnership. The Charles G. Rick Estate, the Angela G. Rick Estate,[2] and Helen R. Curran all claimed an interest in the partnership. The trial court found that the Rick Furniture Company, on the date of death of Charles G. Rick, was owned 60% by Charles G. Rick and 40% by Angela G. Rick. The trial court found that Curran had no interest in the partnership.

Curran contends in her second and third points of error that the trial court erred in excluding from evidence income tax returns of Rick Furniture Company and excerpts from *Dun & Bradstreet,* a business periodical. We agree with Curran and, accordingly, we reverse the judgment of the trial court and remand this cause for a new trial.

I

*Income Tax Returns*

■ Curran contends in her second point of error that the trial court erred in excluding the income tax returns of Rick Furniture Company because these documents were business records under rule 803(6) of the Texas Rules of Evidence. Rule 803(6) provides that the following are not excluded by the hearsay rule:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Curran attempted to introduce into evidence the tax returns of the partnership for the years 1955–81, exclusive of 1956, through the testimony of Floy Waters, bookkeeper and custodian of records for the partnership from 1952–81, and through the testimony of Edward Mearsheimer,

---

1. This statute was repealed and replaced by TEX.CIV.PRAC. & REM.CODE § 37.001, et seq., effective September 1, 1985.

2. The Estate of Angela G. Rick was not made a party to this suit.

comptroller of the partnership and custodian of records from 1968–84. The returns reflect that Curran was a partner in Rick Furniture Company. The trial court improperly excluded the returns for failure to lay a proper predicate. The Ricks now contend on appeal, however, that the tax returns are not business records under rule 803(6).

At trial, counsel for intervenor did not properly object to Waters' testimony. Counsel never obtained a ruling on his contention that such records were not business records, but instead, attempted to educate the court without a proper objection. The trial court sustained the "objection" on another ground—failure to lay the proper predicate.

Counsel for Intervenor: Your Honor, counselor for Ms. Curran is misstating the predicate. It's not either/or; it's at or near the time of the act, event or condition, or by being transmitted by somebody with some personal knowledge. It must be prepared at or near the time of the act, event or condition which is contained herein. That's what I'm trying to establish from this lady, that the— that the entries on this record were not made at or near the time of the event which is portrayed herein. That is, the income was not earned at the end of the year. And she has testified that it was earned as it went along.

This is merely a compilation of the year-end activity. It's not made at or near the time.

Counsel for Curran: Your Honor, the Rule 803 has superseded 3737e. I believe—here's Rule 803, and it's broader and here's what it does state.

(Brief pause.)

THE COURT: Mr. Walker?

Counsel for Intervenor: Your Honor, I would still say that the entry has to be made in close proximity to the act, event or condition. This is merely a complication [sic] of existing law.

THE COURT: You're not telling me IRS documents are not admissible because of that rule, are you?

Counsel for Intervenor: I'm telling you that IRS documents do not constitute business records. Business records are, in fact, the underlying documents that were used to compile this.

Now, the case law is very clear on that. He's trying to prove that as a business record, and it's not.

THE COURT: I agree with that. You will admit it's a compilation, is it not?

Counsel for Intervenor: It is a compilation. It's also—contains arithmetic compilations of figures. It's not a summary and it's not merely just taking documents or taking figures off underlying documents and including it hereon. You use calculations to arrive at this.

THE COURT: I'll agree.

Mr. Yazbeck?

Counsel for Intervenor: For those reasons we object to the documents.

THE COURT: Mr. Wilson?

Counsel for Curran: Further, in line with his first objection, it has to be made at or near the time of the act, this was section c of the reading of article 3737e, section 1, and it was in itself a requirement. I believe that the new 803 is broader, and that that is not the case.

Now, with regard to the matter of—the same objection, as I understand it, they raised previously in this trial, that this is not a business record simply because it is a tax record. I would like to be heard a moment on that. I am not aware of, at this point, where records have been produced for voluntary discovery rather than as being raised as a defense to production of these—a copy of these government records.

If it were raised as a defense to production, that would be another question, of the records that are required to be kept and given to the Internal Revenue Service, but these have been provided by Mr. Kirkland and by the Rick Furniture Company, a partnership, under the Judge's voluntary discovery order, and is now under objection to them as—their introduction, because they're not business records, for the purpose of introduc-

ing them rather than for the purpose of objecting to their discovery or their disclosure. And I feel that on that basis we're entitled to admit them.

I would further state that they are entitled to be admitted as official records under Rule 803.

Counsel for Intervenor: Well, Your Honor, the question of whether or not they constitute official records has long been disposed of by the courts. They're not an official record; they're not prepared or maintained by any governmental entity for that purpose.

But moving back to the original argument, the discoverability of the document has little or nothing to do with its admissibility. We're objecting to the admissibility of these documents on that basis.

THE COURT: Well, I'm going to, at the present time, sustain his objection but not for the reasons he gives.

I don't think these—I don't think this lady here, based on testimony I've heard so far, is qualified to have these documents admitted through her.

I don't think the predicate's been laid for them to be utilized, through her testimony, at least none that I've heard so far.

The trial court also excluded the tax returns, introduced through Mearsheimer's testimony, based upon a failure to lay the proper predicate and the best evidence rule. In reviewing the statement of facts, we hold that Curran laid the proper predicate for admission of the tax returns through the testimony of both Waters and Mearsheimer. Both testified that they were custodians of the records for their respective dates of employment; that the returns were made in the regular course of business; that they were made at or near the time of the events reported; that they were made by someone with personal knowledge; and that it was the regular practice of Rick Furniture Company to make the tax returns.

■ We also find no merit to the claim of the best evidence rule. The testimony indicates that these were authentic photocopies of the tax returns, the originals having been submitted to the Internal Revenue Service. Waters and Mearsheimer testified that they appeared to be true and correct copies of the returns.

The Ricks now contend on appeal that the tax returns were not business records made at or near the time of the events they report; that they were not made for a regular business purpose; and that there is no probative evidence that the returns were made by, or from information transmitted by, a person with knowledge of the act, event, or condition. Although we are hardpressed to find any proper objection as to Waters' testimony, other than an attempt to educate the court, and although the trial court did not rule on this objection, but instead ruled on failure to lay the proper predicate, we will address the Ricks' new contentions.

First, the Ricks contend that the tax returns were not prepared contemporaneously with the events they report and are, therefore, inadmissible under the business records exception. They argue that the records are inadmissible hearsay because the transactions reported by the returns took place throughout the fiscal year of the partnership and were not compiled on the returns and filed with the Internal Revenue Service until nineteen months after the beginning of the fiscal year.

Generally, summaries or compilations of complex, voluminous reports and data are admissible in evidence if the reports and data behind the summaries are admissible. *Black Lake Pipe Line Co. v. Union Construction Co., Inc.,* 538 S.W.2d 80, 92 (Tex. 1976); *see, Ford Motor Company v. Auto Supply Company, Inc.,* 661 F.2d 1171, 1176 (8th Cir.1981); and *Rosenberg v. Collins,* 624 F.2d 659, 665 (5th Cir.1980); *c.f. McAllen State Bank v. Linbeck Construction Corporation,* 695 S.W.2d 10, 16 (Tex. App.—Corpus Christi 1985, writ ref'd n.r. e.). In *Ford,* the trial court properly admitted into evidence product line profitability analyses made annually and compiled from numerous "spread sheets." In *Rosenberg,* the trial court admitted a summary of the commodity firm's yearly trading activities.

In both cases, the summaries were made annually from data compiled during the course of the business year. Finally, in *McAllen*, the trial court admitted into evidence two computer printout summary /breakdowns, each a summary of underlying labor and material records. The court held that the printouts were entitled to be treated as business records, and not just as summaries of business records. We find no significant difference between these summaries and the income tax returns.

Here, the testimony was that the returns were prepared from the general ledger cards—themselves admissible in evidence—reflecting daily bookkeeping entries of the partnership. Spread sheets were then prepared from the ledger cards for preparation of the tax returns. The daily business transactions of the partnership were compiled into the tax returns to reflect the profits or losses of the partnership, its income and expenses. The tax returns are an annual summary of the profitability of the partnership.

■ Furthermore, the primary emphasis of rule 803(6) is on the reliability and trustworthiness of the records sought to be introduced. *See, United States v. Colyer,* 571 F.2d 941, 942, 947 (5th Cir.), *cert. denied,* 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978). We hold that the tax returns are sufficiently trustworthy and contemporaneous with the transactions described. The purpose of the tax returns is to report the profitability of the partnership to the Internal Revenue Service. The returns are made from ledger cards, reflecting the daily transactions of the partnership. They are relied upon by investors, bankers, and other creditors. Furthermore, there is a clear incentive to report the profits fairly and accurately because of the threat of an IRS audit.

■ Second, the Ricks contend that the income tax returns were not made for a regular business purpose because they were made at the behest of the federal government. The Ricks erroneously rely upon *Palmer v. Hoffman,* 318 U.S. 109, 113, 63 S.Ct. 477, 480, 87 L.Ed. 645 (1943);

*Matthews v. United States,* 217 F.2d 409, 417 (5th Cir.1954); and *Standard Oil Company of California v. Moore,* 251 F.2d 188, 222 (9th Cir.1957).

In *Palmer,* the Supreme Court held inadmissible an accident report prepared by a deceased railroad engineer. The court held that the accident report was not prepared in the course of business, but was prepared primarily for use in litigation. The present case is clearly distinguishable. Here, the tax returns were not prepared for litigation, but for reporting the financial condition of the partnership.

In *Matthews,* the court held that the sales records of a sugar company that were required by the government for enforcement of liquor taxes were not sufficiently trustworthy and, thus, inadmissible. The court found that the sugar company had no incentive to keep the records with precision and completeness. *Matthews* was held to be limited to its particular facts and was essentially overruled by *United States v. Veytia-Bravo,* 603 F.2d 1187, 1191 (5th Cir. 1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980). In *Standard Oil,* the court followed *Matthews* in holding that income tax returns were not business records because they were not made in furtherance of a business, but were made at the behest of the Director of the Internal Revenue Service. *Standard Oil* is an Ninth Circuit case and, therefore, we are not bound by its holding.

In *Veytia-Bravo,* the government sought to introduce the records of firearms and ammunition sales prepared by an arms seller, which records were required to be maintained under the regulations of the Bureau of Alcohol, Tobacco and Firearms. The defendant contended that the records were inadmissible under *Matthews.* The Fifth Circuit held that the records were admissible as a business record. The court reasoned:

> To the extent that *Matthews* might be read as concluding that no record required to be kept by law could satisfy the trustworthiness requirement of the busi-

ness records exception, it would now conflict with the realities of today's business world in which many, if not most, of the records of every business are required to be kept by some government edict. *Veytia-Bravo*, 603 F.2d at 1191.

In *Veytia-Bravo*, the Fifth Circuit referred to its earlier opinion, *United States v. Ragano*, 520 F.2d 1191, 1200–01 (5th Cir.1975), *cert. denied*, 427 U.S. 905, 96 S.Ct. 3192, 49 L.Ed.2d 1199 (1976). In *Ragano*, the court held that reports, which state law required a corporation to file, were admissible as business records because the corporation prepared and filed the reports in the regular course of business, and the corporation's failure to file accurate reports might cause it to lose its corporate privileges. Finally, in *United States v. Snell*, 508 F.2d 21, 23 (5th Cir.), *cert. denied*, 423 U.S. 825, 96 S.Ct. 40, 46 L.Ed.2d 41 (1975), the Fifth Circuit upheld the admission of business records of a firearms dealer prepared for the Bureau of Alcohol, Tobacco and Firearms.

Because Texas courts have not yet ruled on the admissibility of income tax records under rule 803(6) of the Texas Rules of Evidence, we rely upon the Fifth Circuit cases of *Veytia-Bravo, Ragano*, and *Snell*, interpreting the similar Federal Rule of Evidence 803(6). We hold that income tax records made at the behest of the I.R.S. are business records made in the regular course of business. Therefore, the returns or portions thereof are admissible under rule 803(6) of the Texas Rules of Evidence, where relevant.

◼ Finally, the Ricks contend that there is no probative evidence that the returns were made by or transmitted from a person with personal knowledge. We cannot agree.

Mearsheimer testified that he personally prepared the 1969–83 tax returns. Waters testified, that as a custodian of records, she typed the returns from information given to her from someone with personal knowledge. Thus, the proper predicate was laid for admission of these returns. To introduce evidence, the custodian does not have

to have prepared the reports, nor does the preparer of the reports have to testify. The requirements of the business records exception can be demonstrated by "testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicates a lack of trustworthiness." *United States v. Grossman*, 614 F.2d 295, 297 (1st Cir.1980); *see, Longoria v. Greyhound Lines, Inc.*, 699 S.W.2d 298, 303 (Tex.App.—San Antonio 1985, no writ). We hold that the proper predicate was laid for admission of the returns, and that the trial court erred in refusing to admit the tax returns of the partnership.

## II

### *Dun & Bradstreet Reports*

◼ Curran contends in her third point of error that the trial court erred in excluding excerpts from *Dun & Bradstreet* because the periodical falls within an exception to the hearsay rule. We agree with Curran.

Curran attempted to introduce into evidence photocopied pages of the 1960–61 and 1966–68 editions of *Dun & Bradstreet*. Albert Vincent Soltero, a certified public accountant, testified that *Dun & Bradstreet* is an accredited business reporting service generally used and relied upon by accountants and businessmen. He then testified that he examined and made photocopies of *Dun & Bradstreet* for the years 1960–61 and 1966–68 and the various pages on which Rick Furniture Company was listed. Curran then attempted to admit these photocopies into evidence under rule 803(17) of the Texas Rules of Evidence. Rule 803(17) admits as evidence: market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations. The trial court excluded this evidence as hearsay.

We hold that *Dun & Bradstreet* excerpts fit within this exception to the hearsay rule. Where it is proven that publications of market prices or statistical compilations

are generally recognized as reliable and regularly used in a trade or specialized activity by persons so engaged, such publications are admissible for the truth of the matter published. *Lewis v. Southmore Savings Association,* 480 S.W.2d 180, 186 (Tex.1972). The matter published by *Dun & Bradstreet* shows Curran to be a partner in Rick Furniture Company. Therefore, we hold that the trial court erred in refusing to admit the *Dun & Bradstreet* excerpts.

### III

#### *Harmful Error*

■ The Ricks contend that, even if the income tax returns and *Dun & Bradstreet* excerpts were improperly excluded from evidence by the trial court, any error was harmless error. The Ricks rely upon the wording of the partnership agreement, signed by the four original partners, (not including Curran), of Rick Furniture Company and dated December 23, 1950. The partnership agreement recites:

> None of the partners shall sell his or her interest in this partnership or in its assets, except to the other partners.

Thus, the Ricks contend that Curran could not have obtained an interest in the partnership except in contravention of the partnership agreement. The Ricks contend, instead, that Curran only obtained a temporary, now terminated, right to receive income from the partnership. They contend that the excluded evidence cannot contravene the express terms of the partnership agreement and that the evidence merely reflects Curran's interest in the partnership.

We cannot agree that the exclusion of Curran's evidence was harmless error. The *Dun & Bradstreet* excerpts and income tax returns list Curran as a partner. Furthermore, Curran's own testimony alleges that she did not obtain her partnership interest in contravention of the partnership agreement. Instead, she alleges that Louis F. Rick, her grandfather, gave her the choice to receive $6,000 or a 2½% interest in the partnership, as a Christmas present. She contends she opted for the partnership interest. Gifts of a partnership interest were not precluded by the partnership agreement.

Therefore, we hold that it was harmful error for the trial court to exclude the relevant and admissible evidence of the *Dun & Bradstreet* excerpts and the income tax returns. We reverse and remand for a new trial.