**AFFIRMED and Opinion Filed January 26, 2021**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

_____

### No. 05-19-01224-CV
_____

**LAKEPOINTE PHARMACY #2, LLC, RAYMOND AMAECHI
AND VALERIE AMAECHI, Appellants
V.
FORNEY DEERVAL, LLC AND FORNEY WILLETTA, LLC, Appellees**

**On Appeal from the 422nd Judicial District Court
Kaufman County, Texas
Trial Court Cause No. 90632-422**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Osborne

In this landlord/tenant dispute, the trial court rendered judgment for plaintiffs/landlords Forney Deerval, LLC and Forney Willetta, LLC after a bench trial. In four issues, Lakepointe Pharmacy #2, LLC, Raymond Amaechi, and Valerie Amaechi, the tenant and lease guarantors, contend the trial court erred by admitting certain evidence, rendering judgment for appellees when there was no evidence of any amounts due under the lease, awarding attorney's fees, and failing to render judgment that appellees take nothing on their claims. We affirm the trial court's judgment.

## BACKGROUND

The facts are well-known to the parties and we do not detail them here except as necessary to explain the basic reasons for our decision. TEX. R. APP. P. 47.4. Under an assignment dated July 15, 2011, appellant Lakepointe Pharmacy #2, LLC ("Tenant") leased premises in Kaufman County to be used as a pharmacy under a 2007 Medical Office Building Lease and amendments ("Lease"). Appellants Raymond Amaechi and Valerie Amaechi were guarantors of Tenant's obligations under the Lease ("Guarantors"). On July 25, 2011, appellees Forney Deerval, LLC and Forney Willetta, LLC (together, "Landlord") succeeded to the prior landlord's rights under the Lease and guaranty. The parties agree that Tenant remained in the premises until early February 2014.[1] Landlord made repairs to the premises and leased them to another tenant for some of the remaining Lease term, which ended on November 30, 2018.

Under the Lease, Tenant was required to pay both "Base Rent" and "Additional Rent," including the "Tenant's Proportionate Share" of "Excess Operating Costs," all defined terms. The primary dispute at trial and now on appeal

---

[1] Although Tenant and Guarantors repeatedly state that they were "locked out" of the premises, there was evidence offered at trial to support a finding that Tenant moved out and abandoned the premises without notifying Landlord before Landlord changed the locks. We also note that under the Lease, Tenant expressly waived "all rights and benefits of tenant" under sections 93.002 and 93.012 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 93.002 (restrictions on interruption of utilities, removal of property, and changing of locks by landlord, including tenant remedies, but "[a] lease supersedes this section to the extent of any conflict"); *Id.* § 93.012 (landlord may not assess charge for rent or physical damage to premises unless amount or method of calculation is stated in the lease).

is whether Landlord offered sufficiently detailed, non-hearsay evidence of the Excess Operating Costs.

The case proceeded to trial before the court in May, 2017. On June 20, 2019, the trial court rendered judgment for the Landlord against Tenant in the following amounts:

> $293,332.36 representing unpaid amounts due under the lease through the date it was terminated;
>
> $22,750.00 representing the sum Plaintiffs [Landlord] paid for tenant improvements as part of their efforts to re-let the subject premises;
>
> $22,440.00 representing the sum Plaintiffs paid for leasing commissions as part of their efforts to re-let the subject premises; and
>
> $43,183.66 representing the difference between the present value of the rent Defendant Lakepointe Pharmacy #2 LLC contracted to pay Plaintiffs in the subject lease through the end of the stated lease term, and the present value of the rent Plaintiffs will receive as the result of their efforts to re-let the subject premises through the end of the stated term of subject lease.

The trial court also awarded Landlord $381,706.02 in damages from Guarantors for breach of the guaranty. The judgment includes awards of attorney's fees for trial and appeal against all defendants.

This appeal followed.

### ISSUES AND STANDARDS OF REVIEW

In four issues, Tenant and Guarantors challenge the trial court's evidentiary rulings and the sufficiency of the evidence. Specifically, they argue the trial court erred by (1) failing to exclude evidence of operating costs that lacked foundation;

–3–

(2) rendering judgment for breach of contract when there was no or insufficient evidence to support a finding that Tenant and Guarantors did not pay all money owed under the Lease; (3) failing to grant a take-nothing judgment on Landlord's claims; and (4) awarding attorney's fees "due to a lack of competent testimony by an expert witness."

The trial court did not file findings of fact and conclusions of law. We therefore imply that the trial court made all the necessary findings to support its judgment, and we may uphold the judgment on any legal theory supported by the pleadings and evidence. *Weisfeld v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 381 (Tex. App.—Dallas 2005, no pet.).

When a party attacks the legal sufficiency of an adverse finding on which it did not have the burden of proof, the party must demonstrate on appeal that no evidence supports the finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). We review the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22, 827 (Tex. 2005). If the evidence admitted at trial would enable reasonable and fair-minded people to differ in their conclusions, then the fact finder must be allowed to do so, and we may not substitute our judgment for that of the fact finder. *Id.* at 822.

When a party attacks the factual sufficiency of the evidence to support a finding on which it did not have the burden of proof, we consider and weigh all the

—4—

evidence both in support of and contrary to the challenged finding. *Sunl Grp., Inc. v. Zhejiang Yongkang Top Imp. & Exp. Co., Ltd.*, 394 S.W.3d 812, 817 (Tex. App.—Dallas 2013, no pet.). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

In a bench trial, the trial judge, as fact finder, is the sole judge of the credibility of the witnesses and the evidence. *Weisfeld*, 162 S.W.3d at 380. The judge may take into consideration all the facts and surrounding circumstances in connection with the testimony of each witness and accept or reject all or any part of that testimony. *Id.* at 380–81.

The admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.). A judgment will not be reversed based on the admission or exclusion of evidence unless the appellant establishes that (1) the trial court's ruling was in error and (2) the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Id.* When reviewing whether evidence was properly admitted or excluded, the appellate court must review the entire record. *Id.*

We review the trial court's decision to grant or deny attorney's fees for an abuse of discretion. *Avila v. Larrea*, 506 S.W.3d 490, 494 (Tex. App.—Dallas 2015, pet. denied). "The fixing of a reasonable attorney's fee is a matter within the sound discretion of the trial court, and its judgment will not be reversed on appeal absent a clear abuse of discretion." *Id.* (internal quotation omitted). Legal and factual

sufficiency of the evidence are not independent grounds under this standard of review, but are relevant factors we may consider in assessing whether the trial court abused its discretion. *Halsey v. Halter*, 486 S.W.3d 184, 187 (Tex. App.—Dallas 2016, no pet.). A trial court abuses its discretion if it acts without reference to guiding rules and principles. *Avila*, 506 S.W.3d at 494.

## DISCUSSION

### I.  Admission of evidence

In their first issue, Tenant and Guarantors argue the trial court erred by failing to exclude "evidence of 'Operating Costs' and 'Tenant's Proportionate Share of Excess Operating Costs'"[2] because the documents offered "lacked the foundation necessary to support admissibility of a data compilation or summary business record." Tenant and Guarantors argue this issue together with their second and third issues, contending that without the improperly-admitted evidence, there was no or insufficient evidence to support the trial court's judgment.

Tenant and Guarantors contend the trial court erred by overruling their objections to Landlord's exhibits ("PX") 29, 30, 31, 32, 35, 36, and 41. All but PX 41 are one-page operating expense reconciliations or estimates provided to Tenant

---

[2] "Additional Rent," "Excess Operating Costs," and "Tenant's Proportionate Share" are defined terms in the Lease. In sum, the Lease provides that in addition to "Base Rent," Tenant is required to pay a percent of the costs of insurance, taxes, security, utilities, management and administrative costs, and other expenses "which Landlord shall pay or become obligated to pay in respect to or in connection with the operation and maintenance of the Building."

during the lease term. PX 41 is a detailed spreadsheet showing each debit and credit made to Tenant's account beginning on August 1, 2011 and ending on February 1, 2014. Tenant argues these exhibits lacked "underlying documents to support or substantiate" the amounts identified as "Operating Cost," "Electric Expense," "CPI adjustments," and "Late Charges." Tenant also contends that PX 41 "includes entries that were never explained by any witness, or justified by any documentary evidence."

We first note that we construe appellants' complaint to include the trial court's rulings on their objections to exhibits 42, 43, and 77 made at trial on the same grounds—hearsay—as their objections to exhibit 41. All four of these exhibits are accounting ledgers created with the same software. PX 77 contains much of the same information as exhibit 41, but covers a longer period of time. PX 42 and 43 are "CM Receivables Ledgers" that, as discussed below, also contain information specific to Tenant's account.

Landlord's witness Charles Setzer testified about these exhibits. Setzer is a CPA and a senior accountant for PMRG, the company used by Landlord for management of the property. He testified that exhibits 41, 42, 43, and 77 are accounting records from PMRG's "MRI commercial management software" that were made at or near the time by, or from information transmitted by, someone with knowledge; the records were kept in the course of a regularly conducted business activity; and making the records was a regular practice of that activity. *See* TEX. R.

EVID. 803(6). In support, Setzer explained how tenant-specific information from a lease is input into the MRI system and how property-specific invoices are reviewed, scanned, paid, and posted to a general ledger by a property manager, then compiled for review by the accounting department. Setzer reviewed batched invoices and cash receipts before they were posted to a tenant's account and entered into the MRI system.

Janet Hetmer, Landlord's property manager who communicated directly with Tenant during the lease term, testified that in accordance with Landlord's regular practices, she kept a tenant file for Tenant and supplied information from it to the accounting department at PMRG. Hetmer and Setzer explained that in accordance with the Lease, Landlord calculated an annual estimate of "Additional Rent" items, charged Tenant monthly according to the estimate, and then at year's end performed a reconciliation of Tenant's actual share. Hetmer testified that estimates and reconciliation statements were sent to Tenant each year and also were kept in Landlord's tenant files. Setzer explained that the amounts of base rent, energy costs, and operating expenses were recorded on ledgers such as PX 41, 42, 43, and 77 in the regular course of Landlord's business at or near the time they were incurred, by persons with knowledge of the information recorded.

Setzer testified that PMRG prepared CM reports like PX 42 and 43 on a regular basis for its client, the real estate investment trust that owns the property. CM reports show "the monthly activity of a tenant" and are included in the monthly

"financial package" sent to the client. The "financial package" includes "monthly reports with a balance sheet[,] income statement, . . . check registers, the accounts receivable, aging report . . . and the CM receivables ledger that shows the monthly activity, the cash in, the charges, that sort of thing." Valerie Sarmento, the asset manager for the building, testified about the monthly financial packages received from PMRG that she reviewed in the regular course of business for inclusion in the REIT's federal securities filings and stockholder materials.

Setzer testified that "Occupant tenant ledgers" or "inquiry reports" like PX 41 and 77 show the transactions in a particular tenant's account, including debits, credits, and payments. They include the same information as the CM reports but in a different format. These reports "would be used internally" to review or "to do a reconciliation for the client or the tenant and go back and review all the transactions that have occurred for a certain period of time."

Hetmer testified about PX 29, 30, 31, 32, 35, and 36, the other exhibits Tenant and Guarantors specifically challenge. These exhibits contain total amounts for, or estimates of, Tenant's proportionate share of operating costs for 2011 through 2014, and Hetmer testified that they were prepared and sent to Tenant each year in the ordinary course of Landlord's business.

Citing *Duncan Development, Inc. v. Haney*, Tenant and Guarantors argue that the challenged exhibits were inadmissible "summaries" because Landlord failed to establish that (1) the records are voluminous, (2) the records were made available to

Tenant and Guarantors "for a reasonable period of time to afford inspection and an opportunity for cross-examination," and (3) "the supporting documents are themselves admissible in evidence." *Duncan Dev't. Inc. v. Haney*, 634 S.W.2d 811, 812–13 (Tex. 1982). This principle is now included in rule 1006, Texas Rules of Evidence:

> Rule 1006. Summaries to Prove Content
>
> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

TEX. R. EVID. 1006.

Landlord replies that the challenged exhibits were not summaries of voluminous records, but were instead records of a regularly conducted activity admissible under evidence rule 803(6). That rule provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> . . .
>
> (6) *Records of a Regularly Conducted Activity.* A record of an act, event, condition, opinion, or diagnosis if:
>
>> (A)   the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>>
>> (B)   the record was kept in the course of a regularly conducted business activity;
>>
>> (C)   making the record was a regular practice of that activity;

–10–

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and

(E) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

TEX. R. EVID. 803(6).

In *McAllen State Bank v. Linbeck Construction Corp.*, the court addressed the distinction between summaries under *Duncan Development, Inc.* and business records under rule 803(6):

However, *Duncan Development, Inc. v. Haney* dealt with a summary of invoices from its "some three dozen subcontractors" **that was prepared for trial purposes**; whereas, here, we are dealing with two computer printout summary/breakdowns that, although each is a summary of underlying business records (labor and materials records), **are themselves business records**. Therefore, the computer printouts were entitled to be treated as business records, and not as a summary of business records for trial purposes.

695 S.W.2d 10, 16 (Tex. App.—Corpus Christi-Edinburg 1985, writ ref'd n.r.e.) (emphasis added). Consequently, the court concluded the trial court did not err by admitting into evidence computer printouts showing "an accounting summary/breakdown of charges for work performed" by the general contractor in the construction and repair of an office building. *See id.* at 16–17.

This Court considered a similar issue in *Curran v. Unis*, 711 S.W.2d 290, 292–96 (Tex. Civ. App.—Dallas 1986, no writ), concluding that a company's

income tax returns were admissible as business records "and not just as summaries of business records":

> Here, the testimony was that the returns were prepared from the general ledger cards—themselves admissible in evidence—reflecting daily bookkeeping entries of the partnership. Spread sheets were then prepared from the ledger cards for preparation of the tax returns. The daily business transactions of the partnership were compiled into the tax returns to reflect the profits or losses of the partnership, its income and expenses. The tax returns are an annual summary of the profitability of the partnership.

*Id.* at 295. We concluded that the tax returns were admissible under evidence rule 803(6). *Id.* at 296.

In *Cabot Oil & Gas Corp. v. Healey, L.P.*, the court considered the admissibility of Cabot's Exhibit 37, consisting of a business records affidavit and attached records. No. 12-11-00236-CV, 2013 WL 1282007, at *5 (Tex. App.—Tyler Mar. 28, 2013, pet. denied) (mem. op.). The records in Exhibit 37 showed oil and gas lease "payout calculations" based on drilling and completion costs, operating revenue, and expenses. *Id.* The trial court excluded Exhibit 37 as hearsay and because it was "an impermissible summary that failed to comply with Texas Rule of Evidence 1006." *Id.* The court of appeals disagreed, concluding that (1) Exhibit 37 should not have been excluded as hearsay because the business records affidavit accompanying it complied with evidence rule 803(6), and (2) "as business records, the payout calculations that comprise Exhibit 37 should not have been excluded as summaries of business records compiled for trial purposes." *Id.* at *6–7.

As in *McAllen State Bank*, *Curran*, and *Cabot Oil & Gas Corp.*, the challenged exhibits "are themselves business records," admissible because Landlord offered evidence to establish the foundation required by rule of evidence 803(6). *See McAllen State Bank*, 695 S.W.2d at 16.[3] These records, the supporting testimony from Landlord's witnesses, and other exhibits offered by Landlord provide legally and factually sufficient evidence to support the trial court's findings of the amounts due resulting from Tenant's and Guarantors' breaches of the Lease and guaranty. *See City of Keller*, 168 S.W.3d at 827; *Sunl Grp., Inc.*, 394 S.W.3d at 817. We decide Tenant's and Guarantors' first, second, and third issues against them.

## II.    Attorney's fees

In their fourth issue, Tenant and Guarantors contend that the trial court's award of $163,005.00 in attorney's fees through trial is unreasonable, not supported by the evidence, and reflects a "beyond excessive" amount of work performed "on what should have been a simple accounting case." They argue that Kevin Cook, Landlord's attorney's fees expert, could not testify to "the basic nature of the pleadings and motions that were filed prior to trial," the names of key witnesses, and "other important details that would be necessary to determine whether the legal work performed was reasonable and necessary." They also complain that the trial court

---

[3] We also note that in many cases, the same figures are included in several different exhibits. In those cases, any error in admitting duplicative evidence was harmless. *See Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 184 (Tex. App.—Dallas 2017, no pet.) ("The erroneous admission of evidence is harmless if it is merely cumulative.").

sustained Landlord's objections to Tenant's questioning of Cook about the lack of a budget for the case and about specific line items on Landlord's attorney's fees invoices.[4]

"[A] claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501–02 (Tex. 2019). Sufficient evidence to support an award of attorney's fees includes, at a minimum, evidence of the following facts: (1) the particular services performed, (2) who performed them, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform them, and (5) the reasonable hourly rate for each person performing the services. *Kelly v. Isaac*, No. 05-19-00813-CV, 2020 WL 4746589, at *7 (Tex. App.—Dallas Aug. 17, 2020, pet. filed) (mem. op.) (citing *Rohrmoos Venture*, 578 S.W.3d at 502). Although contemporaneous billing records are not required, they are strongly encouraged. *Id.* As Landlord argues, it offered evidence on these factors, including its contemporaneous billing records, even though trial occurred before *Rohrmoos Venture* was decided.

---

[4] Tenant and Guarantors also complain that the trial court improperly considered post-trial "affidavit testimony or additional documentation" in making its attorney's fees award to Landlord. Because they did not obtain a ruling on this objection in the trial court, they have waived it on appeal. *See* TEX. R. APP. P. 33.1.

Cook was not the only witness who testified about Landlord's fees. Landlord's attorney Jennifer Gehrt testified, offering her firm's billing statements into evidence that showed the date, the person performing the work, a description of the work done, the amount of time spent, and the amount charged to Landlord for the work performed. Gehrt also testified to the hourly rate charged, and stated her opinion that her firm's services and the fees charged were reasonable for Kaufman County.

Cook then testified about his 35 years of experience in commercial litigation, insurance defense and coverage, and appellate law, including board certification in appellate law for 15 years. He testified that he reviewed Landlord's legal invoices, the pleadings, and the discovery provided to him "to determine whether or not I believed the time spent was both reasonable and necessary," and gave his opinion that the fees charged were both reasonable and necessary for representing Landlord in Kaufman County. He testified that although only Landlord's claims against Tenant were eventually tried, there were depositions, hearings, motion practice and appeal of third party claims that Tenant made against other parties regarding its lease of the premises. He explained that it was reasonable and necessary for Landlord's attorney to attend the hearings and depositions relating to these claims. And he testified that in reviewing the fees, he considered the factors set out in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), most of which are part of the "base lodestar figure" later described by the supreme court

in *Rohrmoos Venture. See Rohrmoos Venture*, 578 S.W.3d at 500 ("we recognize that the base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations").

We conclude the trial court did not abuse its discretion in its award of attorney's fees to Landlord. *See Avila*, 506 S.W.3d at 494. Taken together, Gehrt's and Cook's testimony and the detailed billing records admitted into evidence as PX 68 support the trial court's award of $163,005.00 in attorney's fees and expenses incurred through trial and conditional amounts in the event of appeal. Tenant's and Guarantors' complaints are challenges to Gehrt's and Cook's credibility and the weight to be given their testimony, matters entirely within the trial court's discretion. *See Weisfeld*, 162 S.W.3d at 380.

In so concluding, we also reject Tenant's and Guarantors' complaint that the trial court improperly limited their cross-examination of Cook on the subject of a budget for the case or on particular line items in the fee invoices. The trial court sustained objections to further questioning about a budget after Cook testified that he did not know whether or not Landlord's counsel had prepared one, and the court did allow cross-examination of Cook extending to 50 pages of the reporter's record. The trial court has broad discretion to exercise control over the examination of witnesses, and in any event, Tenant and Guarantors do not contend that any exclusion of evidence probably resulted in the rendition of an improper judgment. *See Armstrong v. McLoughlin*, No. 05-08-00253-CV, 2009 WL 428493, at *1 (Tex.

App.—Dallas Feb. 23, 2009, pet. denied) (mem. op.) (trial court has broad discretion to control examination of witnesses); *Interstate Northborough P'ship v. State*, 63 S.W.3d 213, 220 (Tex. 2001) (successful challenge to trial court's evidentiary rulings requires complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted).

We decide Tenant's and Guarantors' fourth issue against them.

## III.   Additional arguments

In addition to their complaints about the admission of evidence at trial and the attorney's fees award, Tenant and Guarantors argue (1) the trial court erred by denying their motion for summary judgment, (2) Landlord failed to produce competent evidence supporting its claims in response to Tenant's discovery requests, and (3) Landlord is barred from recovery because it failed to furnish itemized statements of costs as required under section 3.4(b) of the Lease ("Payment of Excess Operating Costs"). Because the parties' briefs include argument and authorities on these matters, we address them.

The trial court's denial of Tenant's and Guarantors' motion for summary judgment is not appealable. "The denial of a motion for summary judgment when followed by a conventional trial on the merits does not finally decide any issue pending before the trial court; the denial of a motion for summary judgment presents nothing for review." *Anderton v. Schindler*, 154 S.W.3d 928, 931 (Tex. App.— Dallas 2005, no pet.).

Tenant and Guarantors do not provide any record citations showing that they made their complaints about Landlord's discovery responses to the trial court and obtained a ruling. "To preserve error on a discovery dispute, the appealing party must obtain a ruling by the trial court on the discovery issue." *In re I.A.S.*, No. 05-13-00947-CV, 2014 WL 1483592, at *2 (Tex. App.—Dallas Apr. 15, 2014, no pet.) (mem. op.); *see also* TEX. R. APP. P. 33.1(a) (preservation of appellate complaints).

Regarding Landlord's failure to provide itemized statements as required by Lease section 3.4(b), Landlord argues, among other contentions, that (1) Lease section 3.4(b) expressly provides that Landlord's failure to provide the statements does not affect its right to collect the charges, and (2) Tenant did not introduce any evidence that it gave Landlord the written notice of failure to perform required under Lease section 12.2. Consequently, even if Landlord's statements were insufficiently itemized as Tenant and Guarantors contend, Tenant and Guarantors did not establish that this alleged breach precluded Landlord's recovery of excess operating costs under Lease section 3.4.

We decide these additional matters against Tenant and Guarantors.

## CONCLUSION

The trial court's judgment is affirmed.

/Leslie Osborne/
LESLIE OSBORNE
JUSTICE

191224F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

LAKEPOINTE PHARMACY #2,
LLC, RAYMOND AMAECHI AND
VALERIE AMAECHI, Appellants

No. 05-19-01224-CV     V.

FORNEY DEERVAL, LLC AND
FORNEY WILLETTA, LLC,
Appellees

On Appeal from the 422nd Judicial
District Court, Kaufman County,
Texas
Trial Court Cause No. 90632-422.
Opinion delivered by Justice
Osborne. Justices Schenck and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Forney Deerval, LLC and Forney Willetta, LLC recover their costs of this appeal from appellants Lakepointe Pharmacy #2, LLC, Raymond Amaechi and Valerie Amaechi.

Judgment entered January 26, 2021